UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| NEVADA CORPORATE HEADQUARTERS, INC., <br><br> Plaintiff, <br><br> v. <br><br> SELLERS PLAYBOOK, INC., *et al.*, <br><br> Defendants. | Case No. 2:18-cv-01842-JCM-GWF <br><br> ORDER |

Presently before the court is plaintiff Nevada Corporate Headquarters, Inc.'s ("NCH") motion to remand. (ECF No. 15). Defendants Northern Mechanical Contractors, Inc. ("Northern") and Science Center Drive, LLC ("Science Center") filed a response. (ECF No. 17). Defendants Matthew R. Tieva and Jesssie C. Tieva (collectively "the Tievas") also filed a response. (ECF No. 18). NCH did not file any replies and the time to do so has passed.

Also before the court is Northern and Science Center's motion to dismiss. (ECF No. 7). NCH filed a response (ECF No. 14), to which Northern and Science Center replied (ECF No. 16).

**I.    Facts**

This action arises from a contract dispute between NCH and defendant Sellers Playbook Inc. ("Sellers Playbook"). (ECF No. 1). The complaint contains the following allegations:

On February 13, 2017, the Tievas incorporated Sellers Playbook in Minnesota, which is a company that teaches individuals how to sell goods through online platforms. *Id.* Sellers Playbook had a working relationship with NCH where it would refer its customers to NCH for

compensation. *Id*. The parties do not disclose the nature of the services that NCH would provide to Sellers Playbook's referrals. *See id*.

In late 2017, the Federal Trade Commission ("FTC") began investigating Sellers Playbook for being an enterprise engaging in deceptive acts. *Id*. Although the full extent of the FTC's investigation is unclear at this time, the Tievas and Sellers Playbook received communications indicating that government agencies were looking into Sellers Playbook's business practices. *Id*. Specifically, in February 2018, the advertising review manager for the Better Business Bureau of Minnesota and North Dakota exchanged emails with Mr. Tieva regarding Sellers Playbook's business activities. *Id*. The Minnesota Attorney's General Office also informed the Tievas that they were under investigation. *Id*.

In April 2018, the Tievas approached NCH to arrange an agreement where NCH would pay an advance for referrals at a discount rate. *Id*. The Tievas represented that they were financially sound and needed additional resources to expand the operations of the business including Sellers Playbook and defendant Exposure Marketing Company doing business as Sellers Online and Sellers Systems. *Id*. At no point during the negotiation did the Tievas disclose that the FTC was investigating Sellers Playbook. *Id*.

On April 24, 2018, the parties entered into a written agreement ("Lead Agreement") based upon the Tievas' false statements and material omissions about their business operation and the pending investigation. *Id*. The contract provides that NCH pay a $1,000,000.00 advance in exchange for customer referrals at a discount rate until the advance is completely satisfied. *Id*. The parties agreed that the Tievas would use the funds to expand Sellers Playbook and would repay the advance within twenty-four months. *Id*.

The Tievas diverted the funds to other entities such as Northern or Science Center, which have the same address, phone number, facsimile number, and employees as Sellers Playbook and Exposure Marketing Company. *Id*. On June 30, 2018, the FTC and/or the Minnesota Attorney General's Office shut down Sellers Playbook, seized its assets, and initiated a suit against the Tievas, Sellers Playbook, and Exposure Marketing Company. *Id*. Thereafter, the Tievas ceased referring customers to NCH. *Id*.

On August 16, 2018, NCH initiated this lawsuit in the Eighth Judicial District Court of Nevada. (ECF No. 1). The complaint asserts seven causes of action: (1) declaratory relief; (2) breach of contract; (3) fraud in the inducement; (4) injunctive relief; (5) "corporate theft;" (6) "Fraud: Intentional Misrepresentation;" (7) civil conspiracy; (8) alter ego; (9) unjust enrichment; (10) breach of the implied covenant of good faith and fair dealing; (11) "Fraud: Promise Without the Intent to Perform;" (12) negligence; and (13) punitive damages. *Id*. On September 21, 2018, defendants removed this action to federal court. *Id*.

Now, NCH moves to remand. (ECF No. 15). Northern and Science Center also move to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6). (ECF No. 7).

## II.     Legal Standard

### a.     Remand

Federal courts are courts of limited jurisdiction. *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). "A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *Stock West, Inc. v. Confederated Tribes of Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989).

Upon notice of removability, a defendant has thirty days to remove a case to federal court once he knows or should have known that the case was removable. *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1250 (9th Cir. 2006) (citing 28 U.S.C. § 1446(b)(2)). Defendants are not charged with notice of removability "until they've received a paper that gives them enough information to remove." *Id.* at 1251.

Specifically, "the 'thirty day time period [for removal] . . . starts to run from defendant's receipt of the initial pleading only when that pleading affirmatively reveals on its face' the facts necessary for federal court jurisdiction." *Id.* at 1250 (quoting *Harris v. Bankers Life & Casualty Co.*, 425 F.3d 689, 690–91 (9th Cir. 2005) (alterations in original)). "Otherwise, the thirty-day clock doesn't begin ticking until a defendant receives 'a copy of an amended pleading, motion, order or other paper' from which it can determine that the case is removable. *Id*. (quoting 28 U.S.C. § 1446(b)(3)).

A plaintiff may challenge removal by timely filing a motion to remand. 28 U.S.C. § 1447(c). On a motion to remand, the removing defendant faces a strong presumption against removal, and bears the burden of establishing that removal is proper. *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 403–04 (9th Cir. 1996); *Gaus v. Miles, Inc.*, 980 F.2d 564, 566–67 (9th Cir. 1992).

### b. *Personal jurisdiction*

Federal Rule of Civil Procedure 12(b)(2) allows a defendant to move to dismiss a complaint for lack of personal jurisdiction. *See* Fed. R. Civ. P. 12(b)(2). To avoid dismissal under Rule 12(b)(2), a plaintiff bears the burden of demonstrating that its allegations establish a *prima facie* case for personal jurisdiction. *See Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). Allegations in the complaint must be taken as true and factual disputes should be construed in the plaintiff's favor. *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002).

"When no federal statute governs personal jurisdiction, the district court applies the law of the forum state." *Boschetto*, 539 F.3d at 1015; *see also Panavision Int'l L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998). Where a state has a "long-arm" statute providing its courts jurisdiction to the fullest extent permitted by the due process clause, as Nevada does, a court need only address federal due process standards. *See Arbella Mut. Ins. Co. v. Eighth Judicial Dist. Court*, 134 P.3d 710, 712 (Nev. 2006) (citing Nev. Rev. Stat. § 14.065); *see also Boschetto*, 539 F.3d at 1015.

An assertion of personal jurisdiction must comport with due process. *See Wash. Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 672 (9th Cir. 2012). Two categories of personal jurisdiction exist: (1) general jurisdiction; and (2) specific jurisdiction. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413–15 (1984); *see also LSI Indus., Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1375 (Fed. Cir. 2000).

General jurisdiction arises where a defendant has continuous and systematic ties with the forum, even if those ties are unrelated to the litigation. *See Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1171 (9th Cir. 2006) (citing *Helicopteros Nacionales de Colombia, S.A.*, 466

U.S. at 414–16). "[T]he plaintiff must demonstrate the defendant has sufficient contacts to constitute the kind of continuous and systematic general business contacts that approximate physical presence." *In re W. States Wholesale Nat. Gas Litig.*, 605 F. Supp. 2d 1118, 1131 (D. Nev. 2009) (internal quotation marks and citations omitted). In other words, defendant's affiliations with the forum state must be so "continuous and systematic" as to render it essentially "at home" in that forum. *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014).

Specific jurisdiction arises where sufficient contacts with the forum state exist such that the assertion of personal jurisdiction "does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co.*, 326 U.S. at 316 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). The Ninth Circuit has established a three-prong test for analyzing an assertion of specific personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.*, it must be reasonable.

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). "The plaintiff bears the burden of satisfying the first two prongs of the test. If the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum state." *Id.* (citations omitted).

   *c. Failure to state a claim*

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "[a] short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation

omitted).

"Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. 662, 678 (citation omitted).

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss. First, the court must accept as true all well-pled factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *Id.* at 678–79. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *Id.* at 678.

Second, the court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id.* at 679. A claim is facially plausible when the plaintiff's complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 678.

Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged—but not shown—that the pleader is entitled to relief." *Id.* (internal quotation marks omitted). When the allegations in a complaint have not crossed the line from conceivable to plausible, plaintiff's claim must be dismissed. *Twombly*, 550 U.S. at 570.

The Ninth Circuit addressed post-*Iqbal* pleading standards in *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The *Starr* court stated, in relevant part:

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

*Id.*

/ / /

/ / /

6

**III. Discussion**

Two motions are pending before the court. First, the court will deny NCH's motion to remand because the Lead Agreement provides that this court is an appropriate forum for this litigation. Second, the court will deny without prejudice Northern and Science Center's request that the court to dismiss this action pursuant to Rule 12(b)(2) so the parties may conduct jurisdictional discovery. Third, the court will grant in part and deny in part Northern and Science Center's request that the court dismiss NCH's claims pursuant to Rule 12(b)(6).

*a.     Remand*

NCH argues that the court should remand this case to state court because the Lead Agreement contains a forum selection clause providing that the Eighth Judicial District Court of Nevada is the sole forum for any litigation arising from the Lead Agreement. (ECF No. 15).

The parties do not dispute the validity of the forum selection clause. *See* (ECF Nos. 15, 17, 18). Therefore, the court will interpret the Lead Agreement and determine whether it should remand this case to state court. *See Kamm v. ITEX Corp.*, 568 F.3d 752, 756 (9th Cir. 2009) (Holding that courts remand pursuant to forum selection clauses as a form of abstention in favor of state court jurisdiction).

Federal law applies to forum selection clauses, which requires courts to interpret contracts in their plain and ordinary meaning whenever possible. *Doe 1 v. AOL LLC*, 522 F.3d 1077, 1081 (9th Cir. 2009). Lead Agreement provides in pertinent part:

> Any action claim or proceeding brought under any provision of this agreement shall be commenced exclusively in the Eighth Judicial District Court of Nevada *or the federal courts located in the same location thereof*, as Clark County is considered the place of execution of this Agreement.

(ECF No. 15-4) (emphasis added). The language in this provision is clear and unambiguous. NCH and Sellers Playbook agreed to litigate any dispute arising from the contract in the Eighth Judicial District Court of Nevada or corresponding federal courts, which is the United States District Court for the District of Nevada. Thus, because the District of Nevada is an appropriate forum under the Lead agreement, the court will deny NCH's motion to remand.

*b.     Personal jurisdiction*

The court cannot determine at this time whether it has personal jurisdiction over Northern and Science Center because the record does not show whether Northern and Science Center are Sellers Playbook's alter egos.

A party can consent to personal jurisdiction through a forum selection clause in a contract. *Chan v. Soc'y Expeditions, Inc.*, 39 F.3d 1398, 1406–1407 (9th Cir. 1994). Here, Sellers Playbook consented to jurisdiction in the District of Nevada upon entering the Lead Agreement. *See* (ECF No. 15-4). When a court has jurisdiction over a business entity, the alter ego doctrine allows the court to exercise jurisdiction over that business entities' alter egos. *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1070–71 (9th Cir. 2015); *Flynt Distrib. Co. v. Harvey*, 734 F.2d 1389, 1393 (9th Cir. 1984). Therefore, the pertinent question is whether Northern and Science Center are Sellers Playbook's alter egos.[1]

An alter ego relationship exists when (1) a corporation is influenced and governed by the alleged alter ego; (2) there is such unity of interest and ownership that one is inseparable from the other; and (3) adherence to the corporate fiction of a separate entity would sanction fraud or promote a manifest injustice. Nev. Rev. Stat. 78.747(2); *Lorenz v. Beltio Ltd.*, 963 P.2d 488, 496 (Nev. 1998). Similarly, a corporation can be the alter ego of an individual or other business entity. *LFC Marketing Groups, Inc. v. Loomis*, 8 P.3d 841, 847 (Nev. 2000) (recognizing reverse piercing).

NCH alleges that Northern and Science Center are Sellers Playbook's alter egos as all three entities are owned and controlled by the Tievas. (ECF No. 1). NCH further alleges that all three entities bear the same address, phone number, and employees, and that the Tievas used these entities to divert funds for their personal benefit. (ECF No. 1). Northern and Science Center dispute these allegations. (ECF Nos. 7, 16). Without concrete evidence pertaining to the relationship between Sellers Playbook and its alleged alter egos, the court cannot determine

---

[1] The court also notes that, under the alter ego doctrine, a contract binds the alter egos of its signatories. *See Brown v. Kinross Gold U.S.A., Inc.*, 531 F. Supp. 2d 1234, 1241 (D. Nev. 2008). Thus, the court can also exercise jurisdiction over Sellers Playbook's alter ego pursuant to the Lead Agreement.

whether it has personal jurisdiction over Northern and Science Center.

When the parties have not had an opportunity to sufficiently develop the record so that the court can determine whether there exists an alter ego relationship, jurisdictional discovery is appropriate. *Harris Rutsky & Co. Ins. Serv., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1134–35 (9th Cir. 2003). Therefore, the court will deny without prejudice Northern and Science Center's motion as it pertains to personal jurisdiction. After the parties have conducted the necessary discovery, Northern and Science Center may refile a motion to dismiss for lack of personal jurisdiction.

    *c.    Failure to state a claim*

Northern and Science Center move to dismiss all of NCH's causes of action. (ECF No. 7). The court addresses each in turn.

    *1.    Declaratory relief*

Declaratory relief is a remedy that the court may grant after NCH has established and proven its case. It is not an independent, substantive cause of action. *See Stock W., Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989); *see also* Nev. Rev. Stat. § 30.030; *see also Builders Ass'n of N. Nevada v. City of Reno*, 776 P.2d 1234, 1234 (Nev. 1989). Therefore, the court will dismiss NCH's first cause of action. This dismissal does not preclude the court from awarding declaratory relief once NCH has proven the necessary facts for the court to award such relief.

    *2.    Breach of contract*

Northern and Science Center argue that NCH has failed to state a claim for breach of contract because they are not signatories to the Lead Agreement. (ECF No. 7). The court disagrees.

To state a claim for breach of contract, a plaintiff must allege (1) the existence of a valid contract; (2) that plaintiff performed or was excused from performance; (3) that the defendant breached the contract; and (4) that the plaintiff sustained damages. *Calloway v. City of Reno*, 993 P.2d 1259, 1263 (Nev. 2001); *see also Sierra Dev. Co. v Chartwell Advisory Group, Ltd.*, 223 F. Supp. 3d 1098, 1103 (D. Nev. 2016). Under the alter ego doctrine, a contract binds the

9

alter egos of its signatories. *See Brown v. Kinross Gold U.S.A., Inc.*, 531 F. Supp. 2d 1234, 1241 (D. Nev. 2008).

According to the complaint, NCH and Sellers Playbook signed the Lead Agreement. (ECF No. 1). NCH allegedly performed when it paid Sellers Playbook $1,000,000.00 in exchange for referrals. *Id*. Sellers Playbook initially sent referrals to NCH in accordance with the terms of the Lead Agreement. *Id*. However, after ninety days, Sellers Playbook allegedly ceased performance and caused NCH substantial financial loss. *Id*. These allegations are sufficient to state a claim for breach of contract against Sellers Playbook.

NCH also alleges that Northern and Science Center are Sellers Playbook's alter egos. *Id*. Specifically, Sellers Playbook, Northern, and Science Center purportedly have the same address, phone number, employees, and owners. *Id*. NCH further alleges that the Tievas controlled all three business entities and used them to divert the $1,000,000.00 advance so they could use the funds for their personal benefit. *Id*. Thus, NCH has plausibly alleged an alter ego relationship wherein Northern and Science Center would be liable for Sellers Playbook's purported breach.

### 3. *Fraud in the inducement*

NCH asserts three fraud claims, all of which arise from the Tievas' alleged misrepresentations during the negotiation for the Lead Agreement. (ECF No. 1). Because all three claims pertain to the same substantive allegations, the court will treat these claims as a single cause of action.

To state a claim for fraud in the inducement, a plaintiff must show: (1) a false representation made by defendant; (2) defendant's knowledge or belief that the representation was false, or insufficient knowledge to make such representation; (3) defendant's intention to therewith induce plaintiff to consent to the contract's formation; (4) plaintiff's justifiable reliance upon the misrepresentation; and (5) damages resulting from such reliance. *J.A. Jones Constr. Co. v. Lehrer McGovern Bovis, Inc.*, 89 P.3d 1009, 1018 (Nev. 2004).

Federal Rule of Civil Procedure 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P.

9(b). Under Rule 9(b), a plaintiff must be specific enough to give defendants notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong. *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

NCH alleges that on April 15, 2018, the Tievas negotiated to arrange with NCH the Lead Agreement. (ECF No. 1). According to the complaint, government agencies informed the Tievas in late 2017 and early 2018 that they were under investigation for engaging in deceptive practices with regards to their network of companies. *Id*. Nevertheless, neither of the Tievas disclosed at the negotiation the precarious financial condition of their companies or the pending investigation into Sellers Playbook's activities. *Id*.

NCH further alleges that it would not have entered into the Lead Agreement had the Tievas disclosed the pending investigation because NCH would have understood that Sellers Playbook would not be able to fully perform. *Id*. Thus, the complaint sufficiently apprises the Tievas of the specific misconduct that each of them purportedly committed. *See Swartz v. KPMG LLP*, 476 F.3d 756, 764–65 (9th Cir. 2007) (holding that fraud requires specific allegations of each defendants' misconduct).

The court also explained in section III(c)(2) that NCH has plausibly pleaded that Northern and Science Center are Sellers Playbook's alter egos. If NCH proves the allegations in the complaint to be true, then Northern and Science Center could be liable for the Tievas and Sellers Playbook's fraud. Therefore, the court will not dismiss NCH's fraud claims. *See Iqbal*, 556 U.S. at 678 (holding that a plaintiff must allege facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct).

### 4.  *Injunctive relief*

The court will dismiss NCH's fourth cause of action because injunctive relief standing alone is not a cause of action. *See, e.g.*, *In re Wal-Mart Wage & Hour Emp't Practices Litig.*, 490 F. Supp. 2d 1091, 1130 (D. Nev. 2007); *Tillman v. Quality Loan Serv. Corp.*, No. 2:12-CV-346-JCM-RJJ, 2012 WL 1279939, at *3 (D. Nev. Apr. 13, 2012); *Jensen v. Quality Loan Serv. Corp.*, 702 F. Supp. 2d 1183, 1201 (E.D. Cal. 2010). This dismissal does not preclude the court from awarding injunctive relief once NCH has proven the necessary facts for the court to issue

an injunction.

### 5. *Corporate theft*

Northern and Science Center argue that the court should dismiss NCH's claim for corporate theft because it is not a cause of action in Nevada. (ECF No. 7). NCH did not address Northern and Science Center's argument in its response. *See* (ECF No. 14). In light of NCH's failure to oppose, and because the court is not aware of any authority providing that corporate theft is a cognizable claim, the court will dismiss NCH's fifth cause of action. *See* LR 7-2(d) ("The failure of an opposing party to file points and authorities in response to any motion shall constitute a consent to the granting of the motion.").

### 6. *Civil Conspiracy*

To state a claim for civil conspiracy, a plaintiff must allege that (1) two or more defendants acted in concert with the intent to accomplish an unlawful objective for the purpose of harming another, and (2) damage resulted from the concerted acts. *GES, Inc. v. Corbitt*, 21 P.3d 11, 15 (Nev. 2001); *see also Steele v. EMC Mortg. Corp.*, No. 59490, 2013 WL 5423081, at *1 (Nev. Sept. 20, 2013).

NCH alleges that the Tievas conspired to induce NCH into paying a $1,000,000.00 advance without any intent to fully provide the services that NCH was purchasing. (ECF No. 1). The Tievas also purportedly used their business entities to divert the $1,000,000.00 advance so they could use the funds for personal gains. *Id*. These allegations satisfy the *Iqbal* pleading standard. *See Iqbal*, 556 U.S. at 678.

As the court explained in section III(c)(2), NCH also plausibly alleges that the Tievas used Northern and Science Center as alter egos. When the court assumes these allegations to be true, it can draw a reasonable inference that Northern and Science Center are liable for the Tievas' conspiracy. Therefore, NCH has plausibly alleged a claim for civil conspiracy.

### 7. *Alter ego*

The court explained in section III(c)(2) that NCH has sufficiently alleged an alter ego relationship. Therefore, the court will not dismiss NCH's eighth cause of action.

/ / /

*8. Unjust enrichment*

Recovery for unjust enrichment is not available when there is an express contract. *Leasepartners Corp. v. Robert L. Brooks Trust Dated November 12*, 1975, 942 P.2d 182, 187 (Nev. 1997). The parties do not dispute that the Lead Agreement is a valid, enforceable contract. *See* (ECF Nos. 7, 14). Accordingly, the court will dismiss with prejudice NCH's claim for unjust enrichment.

*9. Breach of the implied covenant of good faith and fair dealing*

"[C]ontracts impose upon the parties an implied covenant of good faith and fair dealing, which prohibits arbitrary or unfair acts by one party that work to the disadvantage of the other." *Nelson v. Heer*, 163 P.3d 420, 426–27 (Nev. 2007). Northern and Science Center argue that they could not have breached the implied covenant as they are not signatories to the Lead Agreement. (ECF No. 7). However, Northern and Science Center's alleged alter ego, Sellers Playbook, is a signatory to the Lead Agreement. (ECF No. 15-4). Because contracts bind the alter egos of their signatories, NCH has plausibly alleged a good faith claim against Northern and Science Center. *See Brown v. Kinross Gold U.S.A., Inc.*, 531 F. Supp. 2d 1234, 1241 (D. Nev. 2008).

*10. Negligence*

Northern and Science Center argue that the economic loss doctrine bars NCH's negligence claim. (ECF No. 7).

The economic loss doctrine bars unintentional tort actions for "purely economic losses." *Terracon Consultants Western, Inc. v. Mandalay Resort Grp.*, 206 P.3d 81, 86 (Nev. 2009). When economic loss occurs as a result of negligence in the context of commercial law, contract law is the appropriate legal mechanism to enforce expectations arising from the parties' agreement. *Terracon*, 205 P.3d at 87.

The injury in this litigation arises from Sellers Playbook's purported breach of the Lead Agreement. (ECF No. 1). NCH specifically alleges that it did not receive the benefit of the bargain because it paid $1,000,000.00 for services that Sellers Playbook did not substantially perform. *Id.* Loss of a bargain's benefit is pure economic loss. *Calloway v. City of Reno*, 993 P.2d 1259, 1263 (Nev. 2000), *overruled on other grounds by Olson v. Richard*, 89 P.3d 31, 31–

33 (Nev. 2004). Therefore, the court will dismiss with prejudice NCH's negligence claim under the economic loss doctrine.

### 11. *Punitive damages*

Punitive damages, similar to declaratory and injunctive relief, are merely a remedy and do not constitute a cause of action. *See Wright v. Watkins & Shepard Trucking, Inc.*, No. 2:11-cv-01575-LRH, 2014 WL 6388789 at *6 n.3 (D. Nev. Nov. 14, 2014). Therefore, the court will dismiss NCH's thirteenth cause of action. This dismissal does not preclude the court from awarding punitive damages once NCH has proven the necessary facts for the court to award such relief.

## IV. Conclusion

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that NCH's motion to remand (ECF No. 15) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that Northern and Science Center's motion to dismiss (ECF No. 7) be, and the same hereby is, GRANTED in part and DENIED in part, consistent with the foregoing.

DATED THIS 16th day of July 2019.

_____
JAMES C. MAHAN
UNITED STATES DISTRICT JUDGE